# IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

AMY BROWN, individually and as
Administratrix of the Estate of
JAMES BRADY LEONARD, deceased,

Plaintiff,

v.                                                CIVIL ACTION NO. 3:18-1496

MASON COUNTY COMMISSION;
GALLIA COUNTY BOARD OF COMMISSIONERS;
POINT PLEASANT VOLUNTEER FIRE DEPARTMENT
ADAM BRYANT, individually and in his official capacity;
NANETTE ELLIOTT;
LISA TURNER; and
JOHN and JANE DOE or DOES,

Defendants.

### MEMORANDUM OPINION AND ORDER

Presently pending before the Court are three motions to dismiss, each filed by a different set of defendants in this case. The first of these motions moves for dismissal of all claims asserted against Defendant Adam Bryant ("Bryant"). *Bryant Mot. to Dismiss*, ECF No. 27. The second motion similarly moves for dismissal of all claims asserted against Defendant Mason County Commission ("Mason County"). *Mason Cnty. Mot. to Dismiss*, ECF No. 30. Finally, the third motion moves for dismissal of all claims asserted against Defendants Gallia County Board of Commissioners ("Gallia County"), Nanette Elliot, and Lisa Turner. *Gallia Cnty. Mot. to Dismiss*, ECF No. 38. For the reasons set forth below, the Court **DENIES** the first motion and **GRANTS IN PART** and **DENIES IN PART** the second and third motions.

# I. BACKGROUND

This case arises out of a tragic set of facts. On December 7, 2016, James Brady Leonard was a passenger in a vehicle participating in a drag race along a stretch of road running parallel to the Kanawha River in Mason County, West Virginia. *Am. Compl.*, ECF No. 4, at ¶ 15; *Gallia Cnty. Mem. of Law*, ECF No. 39, at 1. At some point during the race, the driver lost control of the vehicle and struck a telephone pole. *Am. Compl.*, at ¶ 15. The collision sent the car flying off the road and down a steep embankment, eventually landing in the river below. *Id.* The force of the impact ejected Leonard from the car and launched him into the river. *Id.* A friend, Jeffrey Woodall, pulled Leonard to shore and called 911. *Id.* Though Woodall attempted to carry Leonard back up to the road, the embankment leading to the river was too steep and slippery for Woodall to make the trip with him. *Id.* Instead, Woodall left Leonard on the riverbank and returned to the road in an attempt to find something to warm his friend. *Id.* Sometime after this point, Leonard—bleeding badly—succumbed to his injuries.[1] *Id.* at ¶¶ 22, 24.

The timeline becomes somewhat blurrier at this point. While the Amended Complaint alleges that Mason County Emergency Medical Services ("EMS") did not arrive at the scene for forty-six minutes following Woodall's initial 911 call, it notes only that it "is disputed as to how long it took Gallia County EMS to arrive on the scene." *Id.* at ¶¶ 16, 22. The Amended Complaint similarly does not include any allegation as to the arrival time of the Point Pleasant Fire Department or Adam Bryant.[2] *Id.* at ¶ 18–19. Nevertheless, it appears that "[s]oon after Adam Bryant arrived at the scene, Mr. Leonard's mother"—Plaintiff Amy Brown—arrived as well. *Id.*

---

[1] An autopsy performed by the West Virginia Medical Examiner's Office determined that Leonard's death resulted from exsanguination. *Am. Compl.*, at ¶ 24.

[2] Plaintiff alleges that Bryant was employed as a process server by the Mason County Sheriff's Department, but that he "arrived at the scene wearing a Mason County Sheriff's uniform." *Am. Compl.*, at ¶¶ 11, 19.

at ¶ 20. Plaintiff apparently learned of the accident after receiving a call from Woodall, and was able to arrive "shortly after the crash." *Id.* A Certified Flight Mobile Critical Care Nurse ("CFRN"), Plaintiff had access to her medical flight bag containing "items such as tourniquets, IV[s], IV supplies, dressings, and saline fluid bags." *Id.* Nevertheless, Plaintiff alleges that Bryant prevented her from reaching her son. *Id.* She claims Bryant threatened her and her son's friends on the scene, telling them that "if they went to him, he would arrest them." *Id.* Not immediately dissuaded, Plaintiff recalls Bryant physically restraining her when she again attempted to reach her son. *Id.*

As Gallia County, Ohio borders Mason County, the counties maintain a shared services agreement through which their respective EMS departments may respond to emergency calls when necessary. *Id.* at ¶¶ 22, 23; *Gallia Cnty. Mem. of Law*, at 2. After receiving a request from the Mason County EMS department for assistance in responding to Woodall's call, a Gallia County EMS team reported to the scene. *Am. Compl.*, at ¶ 22. Plaintiff alleges that "when they did arrive, no one from Gallia County EMS, including but not limited to Nanette Elliott and Lisa Turner, checked on Mr. Leonard's pulse, breathing, or examined his body for injuries." *Id.* Instead, Plaintiff alleges "they pronounced him deceased, placed him on a backboard, and carried him up the riverbank to the roadway, where he lay until Mason County EMS arrived." *Id.*

Nearly two years later—and just two days shy of the statute of limitations deadline applicable to her claims—Plaintiff filed a five-count Complaint in this Court against several municipal and individual defendants. Count One is styled a "Due Process Violation," and raises civil rights claims against Bryant and Mason County. *Id.* at ¶¶ 26–41. Count Two is a negligent hiring, training, supervision and retention claim, and is directed at Mason County, Gallia County, and Point Pleasant Volunteer Fire Department. *Id.* at ¶¶ 42–47. Count Three raises a claim for negligent infliction of emotional distress against Mason County, Gallia County, Point Pleasant

Volunteer Fire Department, and Bryant. *Id.* at ¶¶ 48–51. Count Four is an intentional infliction of emotional distress claim raised solely against Bryant. *Id.* at ¶¶ 52–58. Finally, Count Five is styled a "Violation of the West Virginia Medical Professional Liability Act," and is raised against all defendants except Bryant. *Id.* at ¶¶ 59–63.

The Complaint was filed on December 5, 2018. Nearly a month and a half later—on January 17, 2019—Plaintiff's counsel provided a notice of her claims and a certificate of merit to Defendants pursuant to West Virginia Code § 55-7B-6. *See Ex. A*, ECF No 38-1, at 1. On March 5, 2019, Plaintiff amended her complaint to correct the erroneous spelling of Nanette Elliot's first name. *Compare Compl.*, ECF No. 1, at 1, *with Am. Compl.*, at 1. The rest of her Complaint remained unchanged.

On April 24, 2019, Defendants Bryant and Mason County filed their respective motions to dismiss and corresponding memoranda of law. Exactly one month later, Defendants Gallia County, Nannette Elliot, and Lisa Turner filed their motion to dismiss. The parties have fully briefed each motion, and the issues presented therein are ripe for review.

## II. STANDARD OF REVIEW

Rule 8(a) of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) permits a party to attack a complaint for failure to meet this threshold, and authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Put somewhat differently, a "complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims across the line

from conceivable to plausible." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 592 F.3d 250, 256 (4th Cir. 2009). There is no bright-line threshold separating plausible claims from implausible ones; instead, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The Court will grant a motion to dismiss if, "after accepting all wellpleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

At the motion to dismiss stage, the "issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims" he or she makes. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). It follows that a motion to dismiss testing the sufficiency of a complaint "generally cannot reach the merits of an affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Nevertheless, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Id.* Importantly, "[t]his principle only applies . . . if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Id.* (citing *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (internal quotations and punctuation omitted); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract.").

As a final matter, the Court notes that the Fourth Circuit Court of Appeals strongly favors the resolution of cases on their merits rather than on technical or procedural grounds. *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). Consistent with this legal framework, the Court turns to its analysis of the instant case.

## III. DISCUSSION

As noted *supra*, there are three motions to dismiss currently pending before the Court. While some of their arguments do overlap, the Amended Complaint names different parties in each count and often bases their respective liability upon separate conduct. As such, the Court will undertake a count-by-count analysis of each claim below, considering the defendants' motions separately where appropriate.

### A. Count One: Due Process

Plaintiff names only two parties in Count One of the Amended Complaint—Defendants Adam Bryant and Mason County—although its bulk is made up of a laundry list of allegations against Bryant in particular. Because the legal standards governing liability for municipalities and their employees are distinct, the Court will analyze both Defendants' motions in turn.

#### 1. Adam Bryant

The gravamen of Plaintiff's due process allegations against Bryant is that he "deprived plaintiff[] of [her] due process rights, under color of state law, by his affirmative act of restraining [Plaintiff] and preventing her from rendering medical care to her critically injured son." *Am. Compl.*, at ¶ 29. Bryant naturally disagrees, and argues that dismissal of Count One is warranted "because Plaintiff's Complaint only contains recitals of the elements of a cause of action supported by conclusory allegations, which are not entitled to the presumption of truth." *Bryant Mem. of Law*, ECF No. 28, at 3. Fair enough. The Court acknowledges that it is Plaintiff's burden to allege

facts sufficient to "nudge [her] claims across the line from conceivable to plausible," *Nemet Chevrolet, Ltd.*, 592 F.3d at 256, and will carefully consider the Amended Complaint in this light. Yet there is deep irony in Bryant's argument, which is essentially a series of conclusory allegations of conclusory allegations. Bryant does not reference a specific provision of the Amended Complaint anywhere in his merits argument, and confusingly suggests that Plaintiff has not pleaded sufficient facts to support a "claim for Supervisor liability" that she has not raised. *Bryant Mem. of Law*, at 4.

In any event, Plaintiff has alleged more than enough facts to state a claim against Bryant. Taken as true, Plaintiff has alleged that Bryant physically restrained her from assisting her son and thereby prevented her from saving his life. *Am. Compl.*, at ¶¶ 29, 41. As noted above, Plaintiff bases her claim on federal and state due process provisions. While it is never explicitly stated, the Court construes Plaintiff's federal constitutional claim as a § 1983 action. Section 1983 provides a private cause of action for the deprivation of rights, under color of state law, secured by the Constitution and laws of the United States. *Hafer v. Melo*, 502 U.S. 21, 27 (1991). Here, Plaintiff has raised her federal constitutional claims under the Fourteenth Amendment's guarantee that no state "shall deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. Of course, this clause "guarantee[es] more than fair process." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). In particular, it covers "a substantive sphere . . . barring certain government actions regardless of the fairness of the procedures used to implement them." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). Where no other constitutional provision provides protection against a particular source of government behavior, substantive due process is the guide to analyzing a claim. *See id.* at 842. Here, no other constitutional provision applies.

The "touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). It is true that, in general, the Due Process Clause "does not require the State to provide its citizens with particular protective services." *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 196–97 (1989). However, "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself . . . it transgresses the substantive limits on state action set by . . . the Due Process Clause." *Id.* at 200. Of course, the Due Process Clause "does not transform every tort committed by a state actor into a constitutional violation." *Cnty. of Sacramento*, 523 U.S. at 848. Instead, a "plaintiff must demonstrate some egregious official conduct which constitutes an abuse of power that shocks the conscience." *See Tigrett v. Rector & Visitors of Univ. of Va.*, 137 F. Supp. 2d 670, 678 (W.D. Va. 2001) (quoting *Dunn v. Fairfield Cmty. High Sch. Dist. No. 225*, 158 F.3d 962, 965 (7th Cir. 1998)) (internal quotations omitted); *see also Waybright v. Frederick Cnty., Md.*, 528 F.3d 199, 205 (4th Cir. 2008) ("[T]he Supreme Court has . . . marked out . . . conduct wrong enough to register on a due process scale as conduct that shocks the conscience, and nothing less.").

While this is undoubtedly a high bar, Plaintiff's allegations concerning Bryant—taken as true—meet this threshold. Plaintiff claims that Bryant stopped her from providing assistance to her son despite being aware of her role as a critical care nurse. *Am. Compl.*, at ¶ 30. At one point, she claims that he physically restrained her and threatened her with arrest as she attempted to move past him. *Am. Compl.*, at ¶ 31. It is worth noting that discovery may shed more light on the factual circumstances surrounding Plaintiff's interaction with Bryant at the crash scene, and that her factual assertions will no longer be accepted as true at future stages of this action. Yet it bears

repeating that, for the purposes of a motion to dismiss, Plaintiff's allegations are sufficient to state a claim upon which relief may be granted.

To the extent Plaintiff raises state constitutional claims against Bryant, the Court's analysis follows a similar path. The West Virginia Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." W. Va. Const. art. III, § 10. The "republican form of government which exists under the West Virginia Constitution, by its nature encompasses a concept of substantive due process." *Cooper v. Gwinn*, 298 S.E.2d 781, 787 (W. Va. 1981). Unless barred by immunity, a private cause of action exists where a party denies a litigant "rights that are protected by the Due Process Clause embodied within . . . the West Virginia Constitution." *Hutchison v. City of Huntington*, 479 S.E.2d 649, 654 (W. Va. 1996). "In deciding whether a party deprived someone of their property or liberty interest without due process of law under the West Virginia Constitution, the West Virginia Supreme Court looks to, and follows federal case law and precedent." *Smith v. Teach*, No. 3:07-CV-49, 2008 WL 11451886, at *11 (N.D.W. Va. Nov. 13, 2008). Given this congruence, Plaintiff has pleaded sufficient facts to state a claim for relief under the West Virginia Constitution as well.

Of course, the Court's analysis does not end here. Even if Plaintiff has stated a plausible claim, Bryant argues that immunity shields him from liability. As Plaintiff has raised federal and state due process claims, two types of immunity are implicated in the present case: federal qualified immunity, and state statutory immunity.

Qualified immunity is an affirmative defense that may be raised at the motion to dismiss stage. *Raub v. Bowen*, 960 F. Supp. 2d 602, 608 n. 8 (E.D. Va. 2013). Inasmuch as qualified immunity is "an *immunity from suit* rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). As

a result, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In general, qualified immunity shields government officials performing discretionary functions "from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity is not unlimited, however, and "when a government official . . . act[s] totally beyond the scope of his authority, he receive[s] no immunity at common law and is entitled to none under § 1983." *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997). A defendant "bears the initial burden of demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties." *Henry v. Purnell*, 501 F.3d 374, 377 n. 2 (4th Cir. 2007) (internal quotations omitted).

In the instant case, Bryant quotes extensively from Supreme Court precedent to make the case that Plaintiff has not cited a body of law that would put him on notice that he was violating a clearly established right. *See Bryant Mem. of Law*, at 5. He spends no time, however, responding to Plaintiff's allegations that he is employed as a process server for the Mason County Sheriff's Department and therefore "not qualified to be on [sic] emergency scenes." *Am. Compl.*, at ¶ 19. Assuming control of emergency scenes and physically restraining others is hardly within the scope of a process server's employment, and Bryant has made no effort to demonstrate that his alleged conduct "falls within the scope of [his] duties." *Henry*, 501 F.3d at 377 n. 2. Plaintiff's factual allegations regarding Bryant's employment and its attendant scope are therefore undisputed; as such, the Court cannot conclude that qualified immunity shields him from Plaintiff's § 1983 claim.

While federal qualified immunity does not apply to Plaintiff's state law claims against Bryant, the West Virginia Governmental Tort Claims and Insurance Reform Act creates a statutory

immunity that shields municipal employees from ordinary negligence. *See* W. Va. Code. § 29-12A-5 *et seq.* Pursuant to section 29-12A-5(b) of the West Virginia Code, an employee of a political subdivision is immune from liability unless (1) "his acts or omissions were manifestly outside the scope of employment or official responsibilities," (2) "his acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner," or (3) "liability is expressly imposed upon the employee by a provision of this code." Mason County is such a political subdivision. *See* W. Va. Code § 29-12A-3(c). Through his employment by the Mason County Sheriff's Department, Bryant is therefore an employee of a political subdivision for purposes of state law.

While technically distinct from the Court's qualified immunity standard, West Virginia's "approach to matters concerning immunity historically has followed federal law." *City of Saint Albans v. Botkins*, 719 S.E.2d 863, 868 (2011). As such, this analysis is somewhat repetitive. *See Weigle v. Pifer*, 139 F. Supp. 3d 760, 775 (S.D.W. Va. 2015) (reasoning that "much of the same analysis applicable to [Defendants'] invocation of qualified immunity against [Plaintiff's] Section 1983 claims applies with equal force to their invocation of statutory immunity against the state law claims"). "Scope of employment" as defined in West Virginia Code § 29-12A-3(d) "means performance by an employee acting in good faith within the duties of his or her office or employment or tasks lawfully assigned by a competent authority but does not include corruption or fraud." Once again, Plaintiff's undisputed allegations that Bryant is employed solely as a process server leads the Court to conclude that his alleged actions could fall "manifestly outside the scope of [his] employment or official responsibilities." *See* W. Va. Code § 29-12A-5(b). It follows that the Court cannot conclude that statutory immunity bars Plaintiff's state due process claim.

### 2. Mason County Commission

As noted above, Plaintiff raises her due process claims under the Fourteenth Amendment of the United States Constitution and Article III of the West Virginia Constitution. Once again, the Court construes Plaintiff's federal claim as a § 1983 action and notes that the West Virginia Constitution embodies a private cause of action for the vindication of states rights. *See Hutchison*, 479 S.E.2d at 654. Plaintiff appears to base her federal and state due process allegations against Mason County upon her claim that Bryant's alleged constitutional violations "were done pursuant to the policies and procedures of Mason County, or alternatively, in the absence of such policies and procedures to guide its employees [sic] activities." *Am. Compl.*, at ¶ 39.

With respect to Plaintiff's federal due process claim, the Court begins by noting that "[m]unicipalities are not liable under respondeat superior principles for all constitutional violations of their employees." *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 692–94 (1978)). "Instead, municipal liability results only when execution of a government's policy or custom . . . inflicts the injury." *Id.* "Prevailing under such a theory is no easy task." *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014). "A plaintiff must point to a persistent and widespread practice of municipal officials, the duration and frequency of which indicate[s] that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." *Id.* (internal quotations and punctuation omitted).

Plaintiff points to two "policies" in an attempt to impute § 1983 liability upon Mason County: the "failure of the Mason County Sheriff's Department to train, supervise, discipline, employ, and retain Adam Bryant," and "the Mason County EMS's failure to comply" with

minimum state standards for emergency services.[3] *Resp. to Mason Cnty. Mot. to Dismiss*, ECF No. 31, at 7. Even taken as true, Plaintiff's allegations regarding the Commission's failure to supervise Bryant cannot overcome the well-settled principle that municipalities are not subject to liability for all constitutional violations committed by their employees. *Spell*, 824 F.2d at 1385. Plaintiff's threadbare legal assertions that Bryant acted pursuant to municipal policy or custom is insufficient to impute liability for his actions onto the Commission, because she has not plausibly alleged the existence of any such policy or custom guiding Bryant's actions.[4]

Plaintiff's second set of allegations is not as clear-cut. At first glance, the claim that "the Mason County EMS's failure to comply" with minimum state standards for emergency services constitutes an official policy or custom would warrant dismissal for failure to allege the existence of an actual policy or custom. *Resp. to Mason Cnty. Mot. to Dismiss*, at 7. Nevertheless, Plaintiff goes on to connect this failure with an alleged policy on the part of the Mason County EMS to perform for-profit nonemergency transports at the expense of emergency callers. *Id.* at 9. While it is Plaintiff's burden to demonstrate the existence of such a policy as this action moves forward, her allegation here is sufficient to state a plausible claim for relief.

---

[3] Insofar as "the West Virginia Supreme Court looks to, and follows federal case law and precedent" when "deciding whether a party deprived someone of their property or liberty interest without due process of law under the West Virginia Constitution," *Smith*, 2008 WL 11451886, at *11, the Court's analysis of Plaintiff's state constitutional claims against Mason County follows the same path.

[4] Even if Plaintiff had alleged the existence of such a policy, statutory immunity would preclude any liability on the part of Mason County on Plaintiff's state due process claims. *See* W. Va. Code § 29-12A-5(a) (holding political subdivisions liable for "injury, death, or loss to persons or property caused by the negligent performance of acts by their employees *while acting within the scope of employment*"). As Defendant Bryant's alleged actions were clearly *outside* the alleged scope of his employment, Mason County cannot be held liable for his behavior under the West Virginia Constitution.

Despite this apparent clarity, however, issues of state immunity somewhat cloud the picture. It is axiomatic that municipalities and other local governments are simply not protected by qualified immunity. *Int'l Ground Transp., Inc. v. Mayor and City Council of Ocean City*, 475 F.3d 214, 219 (4th Cir. 2007) ("While individual defendants are protected by qualified immunity, municipalities are not."); *see also Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993) ("[U]nlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983."). As such, qualified immunity does not shield Mason County from Plaintiff's federal due process claims stemming from its alleged policy favoring nonemergency transports. Conversely, however, West Virginia law creates a statutory shield that protects Mason County from Plaintiff's claims. Section 29-12A-5(a) of the West Virginia Code provides that "[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." One exception to this general rule is found in section 29-12A-5(a)(5), which immunizes political subdivisions from losses resulting from "the method of providing police, law enforcement or fire protection." The Supreme Court of Appeals of West Virginia has applied this immunity to emergency medical services.[5] *See Miller v. Elkins-Randolph Cnty. Emergency Squad Inc.*, No. 14-0929, 2015 WL 3677209 (W. Va. Jun. 12, 2015) (memorandum decision) (affirming circuit court's application of statutory immunity to EMS squad). Despite the fact that Plaintiff has stated a plausible claim for relief under federal law

---

[5] While it is logical to conclude that the legislature intended this immunity to apply to emergency medical services as well as police, law enforcement, or fire protection, the Court notes that this immunity is limited to "the *method of providing*" these services. W. Va. Code § 29-12A-5(a)(5). Just as immunity does not shield a political subdivision from liability stemming from allegations of a police officer's use of excessive force, it does not shield a political subdivision from liability stemming from specific allegations of an EMS provider's medical malpractice.

against Mason County, her allegation that Mason County prioritizes nonemergency transports over emergency transports falls squarely within this exception. It follows that her state due process claim against Mason County is barred by immunity.

## B. Count Two: Negligent Hiring, Training, Supervision, and Retention

Plaintiff names Mason County and Gallia County in Count Two of the Amended Complaint, which is a negligent hiring, training, supervision, and retention claim. At the outset, the Court notes that West Virginia recognizes a cause of action for negligent hiring and retention. *Thomas v. McGinnis*, 465 S.E.2d 922, 929 (W. Va. 1995). To be held liable under such a theory, a plaintiff must establish that "the employer is negligent in the hiring and retention of an employee and such negligence proximately causes the harm." *Hager v. Robinson*, No. 2:03-0094, 2005 WL 8159176, at *10 (S.D.W. Va. Feb. 1, 2005) (citing *Sipple v. Starr*, 520 S.E.2d 884, 890 (W. Va. 1990)).

With respect to the Mason County Sheriff's Department in particular, Plaintiff bases her claim on an exhaustive—and troubling—recounting of Bryant's history of exceeding his authority as a process server. She alleges that Bryant "had pre[viously] responded to emergency scenes acting as a deputy and made arrests," and on a separate occasion had "produced a Mason County Sheriff's badge at the scene of a fire and threatened to arrest the owner of the house if they [re]turned to their home." *Am. Compl.*, at ¶ 44. She further alleges that Bryant "did not complete police training at the West Virginia State Police Academy, as there were allegations that he cheated on a test and lied about the same." *Id.* According to Plaintiff, the Sheriff's Department was aware of each of these incidents but permitted Bryant "to continue his employment . . . [,] to continue to wear a Mason County Deputy uniform, to display a Mason County Sheriff's [D]epartment badge, and to report to emergency scenes." *Id.*

In determining whether these allegations are sufficient to state a claim for relief under a theory of negligent hiring and retention, courts ask whether an employer should "have reasonably foreseen the risk caused by hiring or retaining an unfit person[.]" *McCormick v. W. Va. Dep't of Public Safety*, 503 S.E.2d 502, 506 (1998) (per curiam). To answer this question, courts consider "the nature of the employee's job assignment, duties, and responsibilities—with the employer's duty with respect to hiring or retaining an employee increasing, as the risks to third persons associated with a particular job increase." *Id.* at 507. Courts follow a similar analysis with respect to claims for negligent supervision. *See Woods v. Town of Danville*, 712 F. Supp. 2d 502, 514–15 (S.D.W. Va. 2010) ("Under West Virginia law, negligent supervision claims must rest upon a showing that [an employer] failed to properly supervise [an employee] and, as a result, [that employee] proximately caused injury to the plaintiffs."). At bottom, "the focus is on whether the employer should have reasonably foreseen the risk" caused by the negligent hiring, retention, or supervision of an employee. *McCormick*, 503 S.E.2d at 506 n. 5.

Here, Plaintiff's disconcerting allegations of Bryant's unauthorized freelance policework lead inevitably to the conclusion that the Sheriff's Department should reasonably have foreseen a risk to third persons. *See Woods*, 712 F. Supp. 2d at 514 (reasoning that a heightened duty applied to police officers because they are, *inter alia*, "permitted to carry guns, use necessary force to effect arrest, and enter civilian residences in certain circumstances"). The fact that this conduct falls outside the alleged scope of employment does not alter the Court's analysis, as an "employee's tortious conduct need not be within the scope of his or her employment" to state a claim for negligent hiring, retention, or supervision. *Evans v. Sanchez Rubio*, No. 2:06-0995, 2007

WL 712291, at *2 (S.D.W. Va. Mar. 6, 2007). As such, Plaintiff has met her burden against Mason County at this stage of litigation.[6]

Plaintiff's remaining allegations against the Mason and Gallia County EMS teams can be fairly grouped together, and are based upon the counties' alleged failure to comply with minimal state and federal standards for emergency responses. With respect to the Mason County EMS, the only connection Plaintiff draws between her claim for negligent hiring, training, supervision, and retention and any actual liability is the threadbare allegation that the Mason County EMS "management [was] not . . . adequately trained and/or supervised to properly schedule its vehicles and/or employees." *Am. Compl.*, at ¶ 44. Without further factual elaboration, Plaintiff has done nothing more than present a "threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft*, 556 U.S. at 678. She has set forth no allegations beyond her own legal conclusion that the Mason County EMS's inadequate response time was proximately caused by negligent hiring, training, supervision, and retention practices. This is precisely the sort of conclusory legal rhetoric that is routinely subject to dismissal under Rule 12(b)(6) in this District. *See*, *e.g.*, *Souk v. City of Mount Hope*, No. 2:14-cv-26442, 2015 WL 5698509, at *15 (S.D.W. Va. Sept. 28, 2015) (Johnston, J.) (dismissing negligent hiring and retention claim where complaint "did not allege any specific factual details . . . that would allow this Court to infer that a reasonable investigation into [an employee's] background would have revealed . . . a potential risk of injury to third parties"); *Mazza v. Deuley*, No. 6:10-cv-00834, 2010 WL 3418318, at *4 (S.D.W. Va. Aug. 26, 2010) (Goodwin, C.J.) (dismissing negligent hiring and retention claim

---

[6] The Court notes that statutory immunity does not shield Mason County from Plaintiff's negligent hiring, training, supervision, and retention claim, inasmuch as West Virginia's municipal liability statute simply "does not contemplate immunity where a plaintiff sues based on negligent hiring and supervision of an employee." *Woods*, 712 F. Supp. at 514.

where plaintiff did "not even attempt to allege a factual predicate" for her claim); *Sullivan v. City of Smithers*, No. 2:08-0337, 2008 WL 1149359, at *7 (S.D.W. Va. Nov. 17, 2008) (Copenhaver, J.) (dismissing negligent hiring, retention, and supervision claim where plaintiff "alleged nothing more than a legal conclusion that [the defendant] was negligent in its selection and retention of" employee).

Plaintiff's allegations against the Gallia County EMS fail for similar reasons. To make out a claim for negligent hiring, training, supervision and retention against Gallia County, Plaintiff essentially leans on allegations of negligence on the part of Defendants Elliot and Turner. *See Am. Compl.*, at ¶ 44. She alleges that they failed to respond to the crash scene in the minimal time provided by West Virginia law, that they failed to perform a "basic life support primary sur[vey]," and that they "also failed to do a physical assessment." *Id.* Finally, she claims that "the[y] failed to contact medical com[mand] to describe Mr. Leonard's condition and request the he be deemed de[ceased] prior to stopping lifesaving measures." *Id.* This entire alleged course of conduct may well be true, but none of it actually alleges negligent hiring, training, supervision and retention on the part of Gallia County. Though Plaintiff does include several conclusory legal allegations related to a negligent hiring and training claim, *see id.* at ¶¶ 43, 45, the facts she has laid out in the Amended Complaint simply do not support a conclusion that negligent hiring, training, supervision or retention proximately caused Plaintiff's harm. *See Woods*, 712 F. Supp. 2d at 514–15. As such, dismissal of Count Two against both municipal defendants is warranted.

### C. Count Three: Negligent Infliction of Emotional Distress

Plaintiff's third claim for relief is predicated on a theory of negligent infliction of emotional distress, and is directed at Mason County, Gallia County, and Bryant. She alleges that the aforementioned defendants "had a duty to provide Mr. Leonard with medical treatment," and that

it "would be foreseeable that a breach of the duty to provide Mr. Leonard with medical treatment would cause serious harm and/or death to him and serious emotional distress to his mother, who was at the crash scene." *Am. Compl.*, at ¶ 49.

To succeed on a claim for negligent infliction of emotional distress under West Virginia law, a plaintiff must establish four elements: (1) "that a close marital or familial relationship exist[s] between the plaintiff and the victim"; (2) "that a plaintiff . . . is present at the scene of the injury-producing event at the time it occurs and is aware that it is causing injury to the victim"; (3) "that the emotional trauma alleged by a plaintiff must be the direct result of either the critical injury to or death of a person closely related to the plaintiff"; and (4) that the emotional distress "reasonably could have been expected to befall the ordinarily reasonable person[.]" *Heldreth v. Marrs*, 425 S.E.2d 157, 163–68 (W. Va. 1992). Arguing for dismissal, Defendants zero in on the second element and argue that Plaintiff's arrival at the scene after her son's accident is fatal to her claims. *See Gallia Cnty. Mem. of Law*, at 17.

While the mere fact that Plaintiff was not present at the time of the crash is undisputed, Defendants' narrow focus on the exact time of the accident misunderstands the law as well as Plaintiff's claims. Plaintiff does not argue that the Mason County EMS, Gallia County EMS, or Bryant had any role in causing her son's crash. Rather, she isolates the injury-producing conduct in the EMS squads' allegedly negligent treatment of her son and Bryant's allegedly negligent decision to restrain her from providing treatment. *Am. Compl.*, at ¶¶ 49–50 ("It would be foreseeable that a breach of the duty to provide Mr. Leonard with medical treatment would cause serious harm and/or death to him and serious emotional distress to his mother, who was at the crash scene. The Defendants breached this duty by not providing Mr. Leonard with any medical

treatment. They further breached this duty by not allowing Ms. Brown, who was trained and qualified to render medical care, to render said care for her son.").

The fact that Plaintiff was not present at the time of her son's crash is therefore irrelevant to her claims of negligent infliction of emotional distress. To be sure, further factual development will be necessary for Plaintiff to actually succeed on her theory; for the purposes of surviving a motion to dismiss, however, she has sufficiently stated a claim.

### D. Count Four: Intentional Infliction of Emotional Distress

Plaintiff's final claim against Bryant alleges intentional infliction of emotional distress ("IIED"). She claims that "Bryant knew of [Plaintiff's] qualifications as a Certified Flight Mobile Critical Care Nurse . . . as he had worked with her in the past," but that "[d]espite his knowledge, he physically restrained [Plaintiff] and kept her from going to her son and providing medical assistance to him." *Am. Compl.*, at ¶¶ 53–54.

To state a claim for IIED under West Virginia law, a plaintiff must establish

(1) conduct by the defendant which is atrocious, utterly intolerable in a civilized community, and so extreme and outrageous as to exceed all possible bounds of decency; (2) the defendant acted with intent to inflict emotional distress or acted recklessly when it was certain or substantially certain such distress would result from his conduct; (3) the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998) (quoting *Hines v. Hills Dept. Stores, Inc.*, 454 S.E.2d 385, 392 (W. Va. 1994) (Cleckley, J., concurring)). "Whether the alleged conduct may be reasonably considered outrageous is a threshold question for the court; whether the conduct is in fact outrageous is a question for the jury." *Radford v. Hammons*, No. 2:14-24854, 2015 WL 738062, at *5 (S.D.W. Va. Feb. 20, 2015) (quoting *Gilco v. Logan Cnty. Commission*, No. 11-32, 2012 WL 3580056, at *5 (S.D.W. Va. Aug. 17, 2012)) (internal quotations omitted).

Although "[c]ourts have struggled to determine whether conduct may reasonably be considered outrageous," *Lambert v. Hall*, No. 5:17-cv-01189, 2017 WL 2873050, at *4 (S.D.W. Va. July 5, 2017), "conduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct," *Courtney v. Courtney*, 413 S.E.2d 418, 423–24 (W. Va. 1991). Taken as true, the conduct alleged here is certainly more than "merely annoying" or "uncivil." A jury could very well determine that physically restraining a mother attempting to provide medical assistance to her son is utterly intolerable in a civilized community. *See Travis*, 504 S.E.2d at 425. It would be similarly reasonable for a jury to determine that Bryant acted recklessly, that his actions caused Plaintiff to suffer emotional distress, and that her distress was so severe that no reasonable person could be expected to endure it. It follows that Plaintiff has pleaded sufficient facts to state a claim for relief under an IIED theory.

### E. Count Five: Medical Negligence

Plaintiff's final claim is based on a theory of medical negligence, and is raised against Gallia County, Mason County, Nanette Elliot, and Lisa Turner. The defendants argue that Plaintiff's failure to comply with certain statutory pre-filing provisions warrants dismissal of Count Five, as well as any other claim stemming from claims for medical negligence. The Court considers this procedural argument below, and then turns to a consideration of the merits of the defendants' argument.

#### 1. Medical Professional Liability Act

In West Virginia, the Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-1 *et seq.*, governs medical malpractice claims. *Drennen v. United States*, 375 F. App'x 299, 302 (4th Cir. 2010). Among other requirements, the MPLA establishes a set of mandatory pre-filing notice provisions. *See* W. Va. Code § 55-7B-6. In particular, a potential plaintiff must serve

(1) a notice of claim and (2) screening certificate of merit "on each health care provider the claimant will join in the litigation" at least "thirty days prior to filing [a] medical professional liability action." *Id.* § 55-7B-6(b). A notice of claim must "include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent." *Id.* A screening certificate of merit, in turn, must "be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death." *Id.* Furthermore, a "separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted." *Id.*

While certainly rigorous, the Supreme Court of Appeals of West Virginia has recognized that these requirements "prevent the making and filing of frivolous medical malpractice claims and lawsuits," and "promote the pre-suit resolution of non-frivolous medical malpractice claims." *Hinchman v. Gillette*, 618 S.E.2d 387, 394 (W. Va. 2005). It follows that these pre-filing notice requirements are mandatory, and apply to any and all claims based on theories of medical professional liability. *See Gaylor v. Dagher*, No. 2:10-cv-00258, 2011 WL 482834, at *11 (S.D.W. Va. Jan. 14, 2011) ("To the extent Plaintiff has alleged a negligence or medical malpractice claim against Defendant, however, he is required to comply with the pre-filing provision of the MPLA."). Despite these strict requirements, it is "clear that the MPLA is not intended to restrict access to the courts or create an opportunity for gamesmanship." *Cooper v. Appalachian Reg'l Healthcare, Inc.*, No. 5;04-01317, 2006 WL 538925, at *2 (S.D.W. Va. Mar. 3, 2006). Indeed, the "thrust of the

[West Virginia Supreme Court of Appeals'] position is that plaintiffs must make a good faith and reasonable effort to further the statutory purposes of preventing frivolous claims and promoting pre-suit resolution of claims." *Id.* It falls to this Court to determine whether Plaintiff has demonstrated such an effort.

In making this determination, the Court begins by noting that Plaintiff's failure to provide the requisite pre-filing notice thirty days before filing her Complaint is undisputed. *Resp. to Mason Cnty. Mot. to Dismiss*, at 11–12 ("Plaintiff agrees with the factual assertion of Mason County that the Complaint was filed on December 6, 2018 and that the Notice of Claim and Certificate of Merit were not mailed until a little more than a month later."). Counsel attempts to rationalize this oversight by advancing several arguments. First, he claims that the Mason County EMS's failure to arrive at the scene until approximately 46 minutes after receiving Woodall's emergency call somehow negated the obligation to provide a screening certificate of merit. *Id.* at 12. Counsel offers no legal support to justify this assumption, because no such support exists. Even if it did, this excuse has no bearing on counsel's failure to provide a notice of claim. Second, Plaintiff repeatedly points out that the notice and certificate of merit were provided before filing the Amended Complaint. *Id.* To begin, the *only* difference between the Complaint and Amended Complaint is the addition of an "N" at the beginning of Defendant Elliot's first name. *Compare Compl.*, at 1, *with Am. Compl.*, at 1. In any event, nothing in the statute's text or the expansive body of precedent addressing MPLA claims suggests that the filing of an amended complaint should have any effect on the date by which notice must be provided. Third and finally, counsel claims that intra-office chaos in the days leading up to the Complaint's filing—and, perhaps more importantly, the close of the applicable two-year statute of limitation—led to a mistake. *Id.* (noting that "Counsel's Office Manager of 35 years had recently retired and Counsel's office was not fully

back up to speed as a result thereof"). Upon realizing the error, "a decision was made to file the Complaint and send the notice out at a later date with a Certificate of Merit." *Id.* Once again, neither the MPLA nor applicable case law provide an exception for administrative disorganization.

Yet, with all that said, this Court has concluded time and again in prior cases that dismissal is a severe remedy that is not warranted where a plaintiff has made a "reasonable effort to further the statutory purpose" of the MPLA. *See*, *e.g.*, *Foster v. Tannenbaum*, No. 3:16-4101, 2016 WL 7379025, at *3 (S.D.W. Va. Dec. 20, 2016) (denying motion to dismiss where the plaintiff attempted to serve a defendant medical provider twice before filing her complaint); *Earle v. City of Huntington*, No. 3:14-29536, 2016 WL 3198396, 2016 WL 3198396, at *5 (S.D.W. Va. Jun. 8, 2016) (finding that the plaintiff "made a good faith effort to comply with the statutory requirements of the MPLA" where she provided notice to remaining defendants after one defendant had already been dismissed for failure to comply with the MPLA). Other courts in the Southern District of West Virginia have adopted similar reasoning. *See Cooper*, 2006 WL 538925, at *2–3 (Faber, C.J.) (concluding that "plaintiffs' pre-suit efforts were made in good faith," rendering dismissal inappropriate); *Sumpter v. United States*, No. 5:16-cv-08951, 2018 WL 2170505, at *6 (S.D.W. Va. May 10, 2018) (Berger, J.) (denying motion to dismiss for failure to comply with the MPLA where *pro se* plaintiff did not provide notice or certificate of merit before filing suit).

The Court reaches a similar conclusion in the case *sub judice*. To be clear, nothing about counsel's management of the MPLA pre-filing requirements is praiseworthy. For whatever reason, he failed to provide any notice to any defendant of any claim against them. Rather than submit a notice of claims and a statement of intent to provide a screening certificate of merit, counsel allowed forty-three days to elapse between the filing of the Complaint and the service of Plaintiff's

notice of claims and screening certificate of merit.[7] Still, the Court is mindful that the MPLA's purpose is not to restrict or deny citizens' access to the judicial system. *See Hinchman*, 618 S.E.2d at 394. Insofar as "[r]ectifiable deficiencies are generally insufficient to warrant dismissal unless the plaintiff has willfully ignored them and made no effort to correct," dismissal is not justified here. *Earle*, 2016 WL 3198396, at *5 (citing *Westmoreland v. Faidya*, 664 S.E.2d 90 (W. Va. 2008)). While belated, Plaintiff's submission of a notice of claims and screening certificate of merits is such an effort. As such, Plaintiff's failure to comply with the pre-filing requirements of the MPLA does justify dismissal of Count Five.

### 2. Merits Analysis

Having concluded that Plaintiff's claim is not barred by the MPLA, the Court turns to a consideration of the merits of the allegations contained in Count Five. As liability for employees of political subdivisions is distinct from liability for employees of political subdivisions, the Court undertakes separate analyses of Plaintiff's claims against Defendants Elliot and Turner and Mason and Gallia Counties.

#### i. Defendants Elliot and Turner

The only count in which they are named, Count Five contains allegations that Defendants Elliot and Turner "failed to exercise the degree of care, skill, and learning required or expected of a reasonable, prudent health care provider acting in the same or similar circumstances in providing

---

[7] The MPLA provides a narrow exception to the thirty-day pre-filing deadline for both documents where "a claimant or his or her counsel has insufficient time to obtain a screening certificate of merit," permitting a potential plaintiff to provide a screening certificate of merit (1) after furnishing "the health care provider with a statement of intent to provide a screening certificate of merit" (2) within "sixty days of the date the health care provider receives the notice of the claim." W. Va. Code. § 55-7B-6(d). While the notice and statement of intent are still subject to the same thirty-day pre-filing clock, Plaintiff's failure to even attempt compliance with this relaxed standard is notable.

medical services to Mr. Leonard," and points specifically to the MPLA for support. *Am. Compl.*, at ¶¶ 59–63. Defendants respond by contending that "the doctrine of qualified immunity bars a claim of mere negligence against a state agency and its employee officers acting within the scope of their employment." *Gallia Cnty. Mem. of Law*, at 13. While true enough, this argument misses the mark; Gallia County is not a state agency, and Defendants Elliot and Turner are not state employees.

While traditional qualified immunity does not apply to Plaintiff's state law claims against Elliot and Turner, the West Virginia Governmental Tort Claims and Insurance Reform Act creates a statutory immunity that shields municipal employees from ordinary negligence.[8] *See* W. Va. Code. § 29-12A-5 *et seq.* As has been noted at several earlier points in this discussion, section 29-12A-5(b) of the West Virginia Code immunizes employees of political subdivisions from liability unless their acts or omissions were manifestly outside the scope of their employment or official responsibilities, their acts or omissions involved a malicious purpose, bad faith, or wanton or reckless behavior, or liability is expressly imposed upon the employee by a provision West Virginia law. As Gallia County is a political subdivision, *see* W. Va. Code § 29-12A-3(c), Defendants Elliot and Turner are employees of a political subdivision for purposes of state law.

Here, no provision of West Virginia law specifically imposes liability upon EMS employees. Plaintiff does not argue that Defendants Elliot and Turner acted outside the scope of their employment when they responded to the crash site, nor does she contend that Elliot or Turner

---

[8] The Court acknowledges the peculiarity of applying the *West Virginia* Governmental Tort Claims and Insurance Reform Act to defendants employed by Gallia County, *Ohio.* Nevertheless, the language of the Act immunizes "political subdivisions" from liability, and defines the term as, *inter alia*, "any county commission, municipality, and county board of education." *See* W. Va. Code § 29-12A-3. In any event, Plaintiff has not briefed or otherwise offered argument on the issue.

acted with a malicious purpose or in bad faith. Plaintiff's only route to overcoming statutory immunity thus depends on a finding that Elliot and Turner's acts and omissions were carried out in a wanton or reckless manner. *See* W. Va. Code § 29-12A-5(b). To act in a wanton or reckless manner, an actor must have "intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make highly probable that harm would follow." *Holsten v. Massey*, 490 S.E.2d 864, 877 (W. Va. 1997) (quoting *Cline v. Joy Mfg. Co.*, 310 S.E.2d 835, 838 n. 6 (1983)). Such conduct is "usually . . . accompanied by a conscious indifference to the consequences, amounting almost to willingness that they shall follow; and it has been said that this is indispensable." *Id.*

A review of the Amended Complaint makes clear that Plaintiff's allegations do not constitute anything more than ordinary negligence. Plaintiff lays out a straightforward medical negligence claim against Elliot and Turner in Count Five, arguing only that they "failed to exercise the degree of care, skill, and learning required or expected of a reasonable, prudent health care provider acting in the same or similar circumstances in providing medical services to Mr. Leonard." *Am. Compl.*, at ¶ 60. The only other factual allegations in the Amended Complaint that relate specifically to Elliot and Turner notes that they did not check "Mr. Leonard's pulse, [his] breathing, or . . . his body for injuries." *Id.* at ¶ 22. "Instead, they pronounced him deceased, placed him on a backboard, and carried him up the riverbank to the roadway." *Id.* Taken as true, these allegations certainly make out a claim for ordinary negligence. Yet Plaintiff is "required under West Virginia law to make specific allegations that effectively demonstrate that defendants are not entitled to the benefit of immunity under W. Va. Code § 29-12A-5(b)." *Burch v. Moore*, No. 5:05-cv-00831, 2007 WL 760527, at *9 (S.D.W. Va. Mar. 8, 2007) (citing *Hutchinson*, 479 S.E.2d at 654). Plaintiff has not done so here, failing to lay out any facts that suggest Elliot and Turner acted

with a "conscious indifference to the consequences" of their actions "amount[ing] almost to willingness that they shall follow." *Holsten*, 490 S.E.2d at 877. Accordingly, statutory immunity shields Defendants Elliot and Turner from Plaintiff's medical negligence claims contained in Count Five. As this is the only count of the Amended Complaint in which they are named, both defendants must be dismissed from this action.

### ii. Mason County and Gallia County

At core, Plaintiff's claims against Mason and Gallia Counties are based upon their alleged failure "to exercise the degree of care, skill, and learning required of a reasonable, prudent health care provider." *Id.* at ¶ 60. This is essentially where the similarity between the allegations raised against both municipal defendants begins and ends. With respect to the Mason County EMS, plaintiff's only allegation of any negligence is their arrival at the scene "48 minutes after the initial call." *Id.* at ¶ 44. Plaintiff attributes this failure not to any medical negligence, but instead to Mason County's alleged policy of prioritizing nonemergency transports. *Id.* Put simply, this falls directly into the immunity exception provided by section 29-12A-5(a)(5) of the West Virginia Code for losses resulting from "the method of providing police, law enforcement or fire protection."[9] In any event, Plaintiff raises no specific allegations of medical negligence against any employees of the Mason County EMS. As such, Mason County is dismissed from Count Five.

Conversely, the Gallia County EMS is not entitled to dismissal. As discussed in the preceding section, Plaintiff alleges that Elliott and Turner—both Gallia County EMS responders—

---

[9] The Supreme Court of Appeals of West Virginia has applied this immunity to emergency medical services. *See Miller*, 2015 WL 3677209. The Supreme Court of West Virginia has concluded that the immunity is limited to the "decision-making or the planning process in developing a governmental policy, including how that policy is to be performed." *Smith v. Burdette*, 566 S.E.2d 614, Syl. Pt. 4 (2002), *overruled on other grounds by Albert v. City of Wheeling*, 792 S.E.2d 628, 632 (W. Va. 2016).

did not check Leonard's pulse, his breathing, or his body for injuries, and that they pronounced him dead without following proper procedures. *Id.* at ¶ 22. Under West Virginia law, "[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." W. Va. Code § 29-12A-4(c)(2). As "[t]he general rule of construction in governmental tort legislation cases favors liability, not immunity," political subdivisions are liable for losses resulting from their employees' negligence "[u]nless the legislature has clearly provided for immunity under the circumstances." *Marlin v. Bill Rich Const., Inc.*, 482 S.E.2d 620, Syl. Pt. 2 (1996). Here, no such immunity applies to shield Gallia County from allegations of Elliott and Turner's negligence.[10] As such, dismissal is not warranted against the Gallia County Board of Commissioners with respect to Count Five.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Adam Bryant's Motion to Dismiss, ECF No. 27, in its entirety. The Court **GRANTS IN PART** Mason County's Motion to Dismiss, ECF No. 30, with respect to Count Five and the state due process claims contained in Count One, but **DENIES IN PART** its motion with respect to Counts Two, Three, and the federal due process claims contained in Count One. Finally, the Court **GRANTS IN PART** Gallia County's Motion to Dismiss, ECF No. 38, with respect to Count Two in its entirety and Count Five as raised against Defendants Elliott and Turner, but **DENIES IN PART** its motion with respect to Count Three in its entirety and Count Five as raised against the Gallia County Board of Commissioners.

---

[10] As discussed in note 5, the section 29-12A-5(a)(5) immunity exception does not shield a political subdivision from liability stemming from specific allegations of an EMS provider's medical malpractice.

The Court **DIRECTS** the Clerk to send a copy of this Opinion and Order to counsel of record and any unrepresented parties.

ENTER:     December 5, 2019

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE